No. 2603

Second Circuit

---

BENNETT  v.  BILBERRY

---

(June 2, 1926. Opinion and Decree.)
(June 30, 1926. Rehearing Refused.)

---

*(Syllabus by the Court.)*

1. **Louisiana Digest—Appeal—Par. 625.**

The decision of the trial judge on a matter of fact will be affirmed when clearly correct and corrected when erroneous.
Bynum vs. Williams, 2 La. App. 74.

2. **Louisiana Digest—Attachment—Par. 18.**

In an attachment suit under Sections 4 and 5 of Article 240 of the Code of Practice, intention on the part of the defendant to defraud is the basis of the right to the writ and must be made to appear by evidence or the writ will be dissolved.
Abel & Bach vs. Duffy, 106 La. 260, 30 South. 833.

Appeal from the Third Judicial District Court of Louisiana, Parish of Lincoln. Hon. S. D. Pearce, Judge.

Action by Q. L. Bennett against T. K. Bilberry.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed in part and reversed as to writ of attachment.

E. L. Walker and T. S. Price, of Ruston, attorneys for plaintiff, appellee.

Dhu Thompson and J. B Holstead, of Ruston, attorneys for defendant, appellant.

## STATEMENT OF THE CASE

REYNOLDS, J. Plaintiff alleged that defendant was indebted to him in the sum of $5.00 with legal interest from October, 1921, on open account; and in the sum of $113.00 with 8% per annum interest from March 10, 1922, until paid, and 10% on the amount of principal and interest as attorney's fees, on a promissory note for that sum, dated March 10, 1922, signed by defendant, drawn payable to the order of plaintiff on October 15, 1922, and stipulating payment of 10% attorney's fees; and in the sum of $120.00 with 8% per annum interest from December 10, 1923, until paid, and 10% on the amount of principal and interest as attorney's fees, on a promissory note for that sum, dated December 10, 1923, signed by defendant and by plaintiff as security, drawn payable to the order of J. J. Henry, on January 1, 1924, and stipulating payment of 10% attorney's fees, and which note, as security, he had to pay.

He also alleged "that defendant has converted, or is about to convert, his property into money or evidence of debt, with the intent to place it beyond the reach of his creditors", upon which an order for the issuance of a writ of attachment was obtained under which there was seized:

"Three-quarters of all the cotton raised on E. O. Johnson place by T. K. Bilberry, consisting of the following: About 50 acres of cotton, more or less, not picked; about 1200 pounds seed cotton, more or less, on wagon picked."

By a supplemental petition plaintiff alleges that the note for $113.00 was lost or mislaid and could not be found notwithstanding diligent search therefor, and that its loss had been advertised according to law.

Defendant moved to dissolve the attachment and for $250.00 damages for its illegal issuance, namely: $200.00 damages to the crop seized, $25.00 attorney's fees for dissolving the writ, and $25.00 for loss of time and injury to feelings, alleging that the grounds on which the writ had issued were untrue.

This motion was tried and overruled by the court.

Defendant filed a plea of prescription of three years as to the item of $5.00 on open account sued for.

Pending hearing on the moton to dissolve the attachment, plaintiff asked for and obtained a default on his original and supplemental petitions over the protest of defendant.

Under protest defendant filed an answer denying that plaintiff was the owner of the $120.00 note and alleging that the consideration for the $113.00 note had failed.

On these issues the case was tried and there was judgment sustaining the plea of prescription as to the item of $5.00 and judgment in favor of the plaintiff for the principal and interest and attorney's fees on the two notes sued on and sustaining the writ of attachment and defendant appealed.

## OPINION

The serious question presented in this case is as to the plaintiff's right to recover on the note for $113.00, the consideration of which is alleged to have failed.

This question must be decided from the evidence introduced in the case and depends on whether or not plaintiff purchased from J. E. Napper & Sons defendant's account with that firm.

As to this fact, Q. L. Bennett, the plaintiff, testified that he paid defendant's account with J. E. Napper & Sons by having W. A. Napper, a member of that firm, credit defendant's account with the firm and likewise to enter a credit on plaintiff's note held against that firm.

This positive testimony of the plaintiff is not denied by W. A. Napper, and it is corroborated to some extent by the testimony of the defendant, T. K. Bilberry, who testified, page 83:

"Q. Mr. Bilberry, I will ask you to make a statement to the court as to how this note happened to be given and why it was given?
"A. Mr. Bennett wanted to take up the account that I owed Napper & Sons, and I told him it would be all right if it was with the firm, and then later he came to me and told me he had taken up the account and asked me to give him a note, and I did."

On this question of fact, as to whether or not the plaintiff actually paid defendant's account, there is a great deal of conflicting testimony; but we think to detail all of the testimony on this point would serve no useful purpose. Our learned and painstaking brother of the District Court, in a well-considered written opinion, said:

"The testimony of the defendant and his witnesses fails to show with anything

like reasonable certainty that plaintiff did not purchase the Bilberry account held by Napper & Sons, as alleged by plaintiff, while plaintiff's testimony is direct and positive that he did purchase the account.

*  *  *  *

"The court gave close attention to the witnesses as they testified pro and con in this case, noted the manner in which they testified and their apparent temper and mood in testifying; and since taking the case under advisement the court has carefully read and weighed and considered the evidence, and is convinced that the plaintiff has proven his demand and is entitled to a judgment for the amount claimed in his suit."

A careful reading of all the evidence in the case convinces us that the holding of the trial court is correct as to the note sued on for $113.00.

The note for $120.00 was given by defendant to J. J. Henry and was signed by plaintiff as security. It was not paid by defendant at maturity and plaintiff was compelled to pay it. Under the law plaintiff thereby became subrogated to the rights of Henry in the note and he is entitled to judgment thereon against the defendant.

The defendant's plea of prescription of three years as to the item of $5.00 sued on was sustained by the court and is not before this court for review.

As to the writ of attachment, plaintiff alleged that the defendant "has converted, or is about to convert, his property into money or evidence of debt, with the intent to place it beyond the reach of his creditors".

The evidence introduced to support this allegation is the testimony of the plaintiff himself, pages 33 and 34:

"Q.  What had Mr. Bilberry done?

"A.  He hadn't done anything.

"Q.  What property had he disposed of with the intention of placing his property beyond the reach of his creditors?

"A.  He had sold thirteen bales of cotton.

"Q.  Do you know who he had sold them to?

"A.  I didn't.  He had ginned his fourteenth bale.  I presume he had sold it to Mr. Barham.

"Q.  You know how much cotton Mr. Bilberry had left on his place at the time?

"A.  I don't know.

"Q.  You had an idea?

"A.  He told me he thought he would get twenty-five bales of cotton.

"Q.  What had he done and what were the particular acts of his?

"A.  He refused to pay Mr. Henry anything at all on the note and Mr. Henry came to me and forced me to pay the note.

"Q.  What other particular acts made you swear that Mr. Bilberry was converting his property into money or evidences of debt with the intent to place it beyond the reach of his creditors?

"A.  Because he was having his cotton ginned and sold and he would not pay the note and I had paid the interest on it for four years and he would not pay his debts, and I had no confidence in him anyway.

"Q.  Was there anything else between you and him that caused you to get out this writ of attachment?

"A.  Not a thing in the world.  Mr. Henry told me unless I seized the crop I would never collect it."

This evidence, in our opinion is not sufficient to warrant us in sustaining the issuance of the writ of attachment.  The only cotton that defendant had disposed of went to the merchants who had furnished him necessary plantation supplies with which to make the crop, and the fact that defendant insisted on paying his current account due for these supplies before making payment on back debts cannot be held to show that he was disposing of his property with intent to de-

fraud anyone. The writ of attachment should have been dissolved with damages.

Defendant testified as to damages as follows, pages 54 and 55:

"Q. What effect has this seizure had on you with reference to loss of time in connection with this matter?

"A. Well, it has had .a great deal. I have lost several days in coming here. I have been out the time and it has left the cotton in the patch that could have been out if this hadn't been placed on it. All the pickers quit on account of it. Just left me and one boy.

"Q. Since this seizure has been on, has it rained on the cotton left in the field?

"A. It has.

"Q. Does that affect the grade of your cotton?

"A. From twenty-two and a half to nineteen cents. That is what they were paying for this storm cotton yesterday.

"Q. I will ask you how else you have been damaged and how much do you figure you have been damaged on account of this seizure over there?

"A. Well, in a way I have been damaged I think a great deal on account of my indebtedness, which I have been held up on, which I possibly could have had squared up which I have yet got to pay, and interest been going on just the same.

"Q. How much in dollars and cents could you say you have been damaged?

"A. Well, I hardly know; a couple of hundred dollars, I expect."

The evidence establishes that $25.00 is due by defendant for attorney's fees for dissolving the writ of attachment.

The above evidence is not sufficient to enable us to fix with any degree of certainty any definite amount of damages suffered by plaintiff by reason of the attachment other than the item of $25.00 attorney's fees.

For these reasons it is ordered, adjudged and decreed that the judgment appealed from be affirmed, insofar as it awards plaintiff judgment for the principal and interest and ten per cent attorney's fees on the two notes sued on and insofar as it sustains the plea of prescription to the item of $5.00 on open account sued for; but the judgment appealed from is reversed insofar as it sustains the issuance of the writ of attachment and the writ of attachment is hereby dissolved and defendant is hereby granted judgment against plaintiff in the sum of twenty-five dollars with legal interest thereon from the date hereof as damages for the illegal issuance of the writ.

It is further ordered, adjudged and decreed that defendant pay the costs of the main suit in the lower court and that plaintiff pay the costs of the attachment in the lower court and the costs of this appeal.